<u>                                                     </u>[8,27,28,31,38,45,54,55,56,59,73, 75,76]

<u>**NOT FOR  PUBLICATION**                                      </u>

<u>**UNITED STATES DISTRICT COURT**</u>
<u>**DISTRICT OF NEW JERSEY**</u>

|  |  |  |
|---|---|---|
| <u>                              </u> | : | |
| BEVERLY ANN HOLLIS-ARRINGTON | : | |
| and | : | Civil Action No. 05-2556 (FLW) |
| CRYSTAL LIGHTFOOT | : | |
|  | : | |
| Plaintiffs, | : | |
| v. | : | **OPINION** |
|  | : | |
| PHH MORTGAGE CORP., et al., | : | |
| Defendants | : | |
|  | : | |
| <u>                              </u> | : | |

<u>**WOLFSON, District Judge**</u>

       Presently before the Court are numerous motions relating to *pro se* Plaintiffs', Beverly

Ann Hollis-Arrington ("Ms. Hollis-Arrington) and Crystal Lightfoot ("Ms. Lightfoot"), First

Amended Complaint[1] alleging violation of 18 U.S.C. § 1962(c), conspiracy to violate 18 U.S.C.

---

[1]The Court notes that Plaintiffs filed their initial complaint on May 13, 2005. Subsequently, Plaintiffs filed an Amended Complaint on June 2, 2005.  On July 11, 2005, Plaintiffs filed an additional motion to Amend their Complaint.  On July 12, 2005, various defendants filed briefs, answers and other dispositive motions in response to Plaintiffs' First Amended Complaint.  On August 3, 2005, Plaintiffs filed a proposed Second Amended Complaint.  Pursuant to Fed. R. Civ. P. 15(a), "a party may amend its pleading once as a matter of course at any time before a responsive pleading is served...[o]therwise, a party may amend the party's pleading only by leave of court or by written consent of the adverse party." Under Rule 15(a), leave to amend shall be freely given, in the absence of circumstances such as undue delay, bad faith or dilatory motive, undue prejudice to the opposing party or futility of amendment. <u>Jablonski v. Pan American World Airways, Inc.</u>, 863 F.2d 289, 292 (3d Cir. 1988).  However, granting leave to amend is futile if the amended complaint cannot withstand a renewed motion to

§ 1962(c), and Common Law Fraud and Deceit.  Plaintiffs contend that Defendants[2] conspired to defraud borrowers by making loans to unqualified recipients, including Plaintiffs, for Defendants' financial benefit.  Moreover, Plaintiffs allege that the conspiracy involved several large financial institutions and individuals as well as members of the judiciary.

Defendants have filed numerous individual motions in this action.  Specifically, the matters before the Court are: (1) Cendant Corporation, Fannie Mae, PHH Mortgage Corp. and Suzann Marie Hankins' ("Cendant") Motion to Dismiss and to Impose Sanctions on Plaintiffs as Vexatious Litigants and a Request for Judicial Notice; (2) Fidelity National Title Insurance Company's ("Fidelity") Motion to Dismiss; (3) Conny B. McCormack's ("McCormack") Motion to Dismiss; (4) USAA Casualty Insurance Company's ("USAA") Motion to Dismiss; (5) Harold Tennen's ("Tennen") Motion to Dismiss; (6) Household Finance Corporation of California's ("Household") Motion to Dismiss; (7) Judge Consuelo B. Marshall, Judge Stephen V. Wilson, Judge Pamala Rymer and Judge Andrew Kleinfeld's ("Judges") Motion to Dismiss; (8) Robert O. Matthews ("Matthews") Motion to Set Aside Default and Motion to Dismiss; as well as Plaintiffs' Motion for a Preliminary Injunction.

Upon consideration of the papers, the Court (1) Grants Cendant's Motions to Dismiss and for Judicial Notice and grants in part Cendant's Motion to Impose Sanctions; (2) Grants Fidelity's Motion to Dismiss; (3) Grants McCormack's Motion to Dismiss; (4) Grants USAA's

---

dismiss.  Id.  Because Plaintiff's Second Amended Complaint cannot resolve the numerous deficiencies in Plaintiffs' First Amended Complaint, as discussed infra, this Court will not grant Plaintiffs leave to file a Second Amended complaint.

[2] Although there are numerous individual defendants involved in this litigation, this opinion will refer to them collectively as "Defendants" for the sake of simplicity wherever possible.

Motion to Dismiss; (5) Grants Tennen's Motion to Dismiss; (6) Grants Household's Motion to

Dismiss; (7) Grants Judges' Motion to Dismiss; (8) Grants Matthews' Motion to Set Aside

Default and Grants Matthews' Motion to Dismiss; and denies Plaintiffs' Motion for a

Preliminary Injunction[3].

Moreover, although this Court declines to declare Plaintiffs as vexatious litigants under

28 U.S.C. §1927, I am exercising my inherent power to enjoin these Plaintiffs from filing further

complaints unless certain conditions are met as set forth herein.

**I. Background**

Since May 2000, Plaintiffs have instituted multiple lawsuits against numerous defendants

in state and federal courts throughout the United States.  Plaintiffs' actions include four prior

district court cases, five bankruptcy filings, eight appeals to the United States Court of Appeal

and numerous petitions for certiorari.  Each of these lawsuits pertains to the same matter and

recycles the same arguments against many of the same Defendants.  Collectively, Plaintiffs'

actions have squandered the resources of the judiciary as well as substantial resources of the

named defendants who are forced to continuously defend these actions in courts across the

country.  Although Plaintiffs' actions in the district courts alone have garnered nearly 500 docket

entries, this Court will attempt to summarize the extensive litigation that the Plaintiffs have

initiated thus far.

---

[3]On October 19, 2005, Plaintiffs filed a request for default against Fannie Mae for failure
to file an answer or other pleading in accordance with the Federal Rule of Civil Procedure 12(a) .
However, on June 29, 2005,  Fannie Mae filed a Motion to Dismiss Plaintiff's First Amended
Complaint. Thus, this Court dismisses Plaintiffs' request and finds that Plaintiffs' request for
default is entirely without basis.

Plaintiffs' complaints in this action, and their complaints in all the judicial actions cited below, arise from a loan that Ms. Hollis-Arrington received to refinance a first and second mortgage on real property located at 7106 McClaren Avenue, West Hills, California (the "Property"). Cendant Request for Judicial Notice ("RJN") Doc. 41 at p.2. In August 1999, Cendant lent Hollis-Arrington $180,400 secured by a deed of trust on the Property. Id. The first payment was due in October 1999, but Ms. Hollis-Arrington did not make that or any later payments on the loan and the loan went into default later that month. Id. Ms. Hollis-Arrington's difficulty making payments on her loan was allegedly caused by heart problems and stress resulting from ongoing civil and criminal litigation. RJN Doc. 2 at ¶¶ 7, 11. Based on these difficulties, Cendant provided Plaintiff with information regarding programs for curing her default. Id. at ¶ 10. Ms. Hollis-Arrington requested a forbearance agreement from Cendant, and in February 2000, Cendant acknowledged Plaintiff's request and sought additional information from her including a financial statement and hardship letter. However, Cendant subsequently rejected the forbearance agreement. RJN Doc. 26 at p. 2.

In an effort to avoid foreclosure, Ms. Hollis-Arrington filed her first two bankruptcy cases in May and July 2000; both lawsuits were dismissed because Plaintiff failed to make required filing payments. RJN Docs. 3 & 4. Ms. Hollis-Arrington then deeded her home to her daughter, Ms. Lightfoot, who filed her own bankruptcy petition. RJN Doc. 5. This petition was dismissed in October 2000 for failure to make required payments. Id. Ms. Lightfoot transferred title in the home back to Ms. Hollis-Arrington, who filed her third bankruptcy case in March 2001. RJN Doc. 46 at ¶102. However, the Property was eventually sold to Defendant Tennen and Ed Feldman in a foreclosure sale on June 29, 2001. Cendant Mot. to Dismiss at 5.

4

Despite the foreclosure and eviction, Plaintiffs continued to pursue multiple lawsuits. Ms. Hollis-Arrington filed her first federal lawsuit against Cendant[4] in United States District Court for the Central District of California, Western Division, on October 18, 2000. RJN Doc. 1,2. There, Plaintiff claimed that Cendant had fraudulently promised to provide her with a forbearance agreement after she fell delinquent but reneged and foreclosed on the property instead. Id. In July 2002, the court granted Cendant's motion for summary judgment, dismissing all of Plaintiff's claims. Id. The Ninth Circuit affirmed the judgment on appeal and the United States Supreme Court denied Hollis-Arrington's petition for certiorari. RJN Doc. 14; Hollis Arrington v. Cendant Mortgage Corp., 540 U.S. 1000 (2003).

In June 2001, Ms. Hollis-Arrington filed her second lawsuit against Cendant, Fannie Mae and Attorneys Equity National Corporation for violations of RICO, two federal lending statutes and due process, as well as for a variety of state law claims ranging from fraud to slander of title. RJN Doc. 20. Plaintiff's theory underlying these claims was that Cendant conspired with Fannie Mae to make loans to non-creditworthy African Americans in order to induce their default and allow Fannie Mae to foreclose and acquire their property. Id. In May 2002, after several interlocutory filings and the filing of a second amended complaint, the district court granted the Defendants' motion to dismiss all the federal claims including RICO, with prejudice, and granted the Defendants' motion for attorney's fees. RJN Doc. 26. On appeal, the Ninth Circuit affirmed, RJN Doc. 29, and the Supreme Court again denied her petition for certiorari. Hollis Arrington v. Cendant Mortgage Corp., 540 U.S. 963 (2003).

_____

[4]Although Cendant Mortgage Corp. has subsequently changed its name to PHH Mortgage Corp., see Cendant's Mot. to Dismiss n.1, throughout this opinion, the Court will refer to PHH as "Cendant."

In July 2002, Plaintiffs filed a third lawsuit in Los Angeles Superior Court.  RJN Doc. 35.
Not only were all the defendants named in the second lawsuit named again in the third lawsuit,
but Plaintiffs made the same allegations in the third action and their claims were based on the
same alleged conspiracy to make loans to non-creditworthy borrowers and to subsequently
foreclose on their properties.  Id.  Defendants removed that action to federal court in August
2002.  RJN Doc. 36.  Subsequently, the district court granted defendants motion to dismiss the
litigation as barred by res judicata and the Ninth Circuit affirmed.  RJN Doc. 38.  Thereafter,
Defendants moved for an order declaring Plaintiff a vexatious litigant; although this motion was
denied, the Court "strongly caution[ed] plaintiff against further filings involving the same facts
and/or claims raised in her previous three lawsuits against Cendant and Fannie Mae. The Court
has already adjudicated the merits of the issues in those three cases and defendants should not be
subjected to further litigation from this plaintiff (or her relatives) on the same issues."  RJN Doc.
43.

In November 2003, Ms. Hollis-Arrington filed another lawsuit in the United States
District Court for the District of Columbia.  RJN Doc. 46.  In this action, Plaintiff added several
new defendants including the Honorable Conseuelo Marshall of the Central District of
California, Western Division, and the Honorable Pamala Rymer, the Honorable Andrew
Kleinfeld and the Honorable Stephen V. Wilson, the judges who comprised the Ninth Circuit
panel that ruled against Plaintiffs.  In addition, although Plaintiffs' new lawsuit recast their
claims as violations of Due Process and Equal Protection, these claims were based on the same
allegedly wrongful foreclosure of the Cendant loan, and the district court granted Defendants'
motion to dismiss based on res judicata.   RJN Doc. 47.  Moreover, the Court ordered "that

plaintiff shall file nothing further in relation to this case without leave of Court, other than a notice of appeal, and that any filings plaintiff attempts to make without leave of Court shall be deemed vexatious litigation and sanctioned accordingly."  The Court of Appeals affirmed the District Court's decision finding that the lower court did not abuse its discretion by prohibiting Hollis-Arrington from further filings related  to the case without leave of Court because she "has a long history of filing meritless litigation concerning the foreclosure underlying this case." RJN Doc. 48.

Despite the strong language in the opinions of both the District and Appellate Courts for the District of Columbia, Plaintiffs were not dissuaded from further filings.  In May 2005, Plaintiffs initiated the instant lawsuit in the District of New Jersey when they filed a complaint against the above defendants. Subsequently, on June 28, 2005, Cendant filed a Motion to Dismiss and Impose Sanctions on Plaintiffs as Vexatious Litigants.  On July 12, 2005, McCormack and Fidelity individually filed motions to dismiss. One week later, on July 19, 2005, USAA filed a motion to Dismiss.  On September 2, 2005, Judges Wilson, Rymer, Kleinfield and Marshall filed a Motion to Dismiss, and finally, on November 2, 2005, Matthews filed Motion to Dismiss.  In addition, Plaintiffs filed Motion for Preliminary Injunction on September 16, 2005.

## II. DISCUSSION

Plaintiffs' First Amended Complaint contains three counts[5] all of which are without any legal basis or justification.  Indeed, Plaintiffs' complaint reflects nothing more than paranoia and

---

[5]Although the allegations that form Plaintiff's complaint are not entirely clear, the Court has deciphered three counts within the complaint that I will focus on in this opinion.

unsubstantiated conspiracy theories involving numerous corporations and private individuals as well as members of the judiciary.  Plaintiffs allege that Defendants perpetrated "illegal loan fraud and securities violations...through a complex and highly disciplined network of financial, judicial, closing agents, as well as a host of others in the enterprise." Pls' First Amended Complaint ("Compl.") at ¶ 15.  Specifically, Plaintiffs contend that Defendants attempted to "defraud unsuspecting borrowers, by makings [sic] loans which borrowers are not qualified for thru [sic] fraudulent loan applications claims," to benefit financially from this operation, and to influence judges to rule in Defendants' favor in any subsequent litigation. Compl. at ¶ 17.  In Count I and II Plaintiffs assert that Defendants violated and had a conspiracy to violate 18 U.S.C. § 1962(c).  In Count III, Plaintiffs allege common law fraud and deceit.

In response, Defendants have filed numerous motions including individual Motions to Dismiss Plaintiffs First Amended Complaint.  I will address each individual motion in turn; however, before turning to each of Defendants' motions, the Court raises, sua sponte, the issue of whether Plaintiff's Complaint violates Federal Rule of Civil Procedure 8 which provides that a party filing a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8.  A district court may dismiss a complaint that fails to provide a simple and coherent statement of entitlement to relief.  See e.g. Hartz v. Friedman, 919 F.2d 469, 471 (7th Cir. 1990) (stating that "[t]he district court might well have dismissed the plaintiffs' complaint on the ground that it was an egregious violation of Rule 8(a).").  The decision regarding whether to dismiss a complaint for inadequacy under Rule 8 lies within the sound discretion of the District Court.  See Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) ("When a complaint does not comply with the requirement that it be short and plain, the court

has the power. . .to dismiss the complaint."). Here, Plaintiffs' complaint comprised more than 60 pages of untenable and rambling allegations. Thus, this Court finds that Plaintiffs' complaint violates Federal Rule of Civil Procedure 8.

Moreover, although normally a court would consider granting a litigant leave to amend a complaint, especially when the litigant is acting pro se, a district court need not allow a curative amendment where it would be futile and inequitable. See supra n.1; Alston v. Parker, 363 F.3d 229 (3d Cir. 2004). A court may deny Plaintiff leave to amend a complaint for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962). For the reasons discussed infra, allowing Plaintiffs to amend their complaint would be futile because the complaint cannot succeed as a matter of law. Thus, the Court holds that Plaintiffs' Complaint must be dismissed as a violation of Federal Rule of Civil Procedure 8.

**A. Cendant's Motions**

In response to Plaintiffs' Complaint, Cendant filed a Request for Judicial Notice and  a Motion to Dismiss and to Impose Sanctions on Plaintiffs as Vexatious Litigants. The Court will initially address Cendant's Request for Judicial Notice.  Cendant requests that the Court take judicial notice of documents filed with this and other courts pursuant to Federal Rule of Evidence ("FRE") 201.  Under FRE 201, courts can judicially notice public records including prior judicial opinions.  See Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004); Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd., 181 F.3d 410, 427 (3d Cir.1999).

Therefore, the Court grants Cendant's Request for Judicial Notice.

Cendant additionally filed a Motion to Dismiss Plaintiffs' Complaint on three grounds: first, Cendant contends that Plaintiffs' lawsuit is barred by res judicata; second, Cendant argues that this Court does not have jurisdiction over Defendant Suzanne Hankins; finally, Cendant contends that Plaintiffs' Complaint fails to state any claim upon which relief can be granted.

1. Cendant's Motion to Dismiss: Res Judicata

Initially, Cendant argues that Plaintiffs' Complaint is barred by res judicata.  The principle of res judicata bars the re-litigation of claims that were previously decided, involve the same parties and arise out of the same transaction.  See generally e.g. Arab African Int'l Bank v. Epstein, 10 F.3d 169, 171 (3d Cir. 1993).  Res judicata operates following a final judgment on the merits and precludes a party from re-litigating issues that were or could have been raised in the original action.  See Allen v. McCurry, 449 U.S. 90 (1998).  This principle avoids "the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions."  Montana v. U.S., 440 U.S. 147, 153-54 (1979).  Indeed, although every litigant is entitled to a "day in court," the doctrine of res judicata bars litigants from pursuing additional opportunities to litigate claims arising out of the same matter.  See Hopewell Township v. Volpe, 446 F.2d 167, 169 (3d Cir. 1971).   In order for a subsequent action to be barred by res judicata, there must be: (1) a final judgment on the merits in a prior action; (2) identical parties or parties in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier action. See Arab African Int'l Bank, 10 F.3d at 171; Sutton

10

v. Sutton, 71 F. Supp.2d 383, 390 (D.N.J. 1999).   Accordingly, Cendant argues that this Court

must dismiss Plaintiffs' suit because each of the criteria of res judicata is satisfied.  Specifically,

Cendant contends that: (1) Plaintiffs' four prior suits in United States District Court were

resolved by final judgments on the merits; (2) the current suit is against the same parties and/or

those in privity with them; and (3) this action involves the same cause of action as the prior

litigation.  The Court agrees.

   First, the Court notes that each of Plaintiffs' four previous lawsuits in the United States

District Court were resolved by a final judgment on the merits against Plaintiff.   In October

2000, Plaintiffs filed suit in the United States District Court for the Central District of California,

Western Division against Cendant and United Guaranty Insurance Corporation; in July 2002,

Judge Consuelo B. Marshall granted Defendants' Motion for Summary Judgment dismissing all

Plaintiffs' claims.  RJN Doc. 12.   In June 2001, Plaintiff filed a second lawsuit against Cendant,

Fannie Mae and Attorneys Equity National Corporation alleging violations of RICO, due

process, federal lending statutes and a variety of state law claims including fraud.   In May 2002,

Judge Marshall granted Defendants' Motion to Dismiss all the federal claims.  Plaintiffs filed a

third lawsuit in July 2002 in Los Angeles Superior Court against all of the defendants named in

the second lawsuit and Robert O. Matthews.  RJN Doc. 35.  Defendants removed the action to

Federal Court and Judge Marshall granted Defendants' Motion to Dismiss because the claims

were barred by res judicata.  Plaintiffs filed a fourth lawsuit in November 2003 in the United

States District of Columbia against the same defendants and the Judges who had ruled against

her. RJN Doc. 46.  The district court granted the Defendants' Motion to Dismiss based on res

judicata.  Because each of these lawsuits was resolved by a final judgment on the merits, the first

criteria for res judicata is met.

In addition, the Court finds that the current suit is against the same Defendants or those in privity with the Defendants as the prior actions.  Cendant, PHH, Fannie Mae and Suzanne Hankins[6] have all been named in at least one of Plaintiffs' prior lawsuits.  Thus, the identity of the parties is the same and the second requirement for res judicata is satisfied.

Finally, this Court must consider whether the same cause of action is involved in the instant case as in prior litigation.  In deciding whether two suits are based on the same claims, the Third Circuit takes a "broad view, looking to whether there is an essential similarity of the underlying events giving rise to the various legal claims."  Robertson v. Bartels, 148 F. Supp. 2d 443, 448 (D.N.J. 2001) (internal citations omitted). A court should consider two causes of action the same if they "arise from the same transaction, with the scope of the transaction being determined by considering whether there exists a common nucleus of operative facts."  Id. at 448-49.   In other words, the same cause of action is at stake if it "grew out of the same occurrence as the claim in the earlier one."  Hamburg Music Corp. v. Winter, 2005 WL 2170010 at *4 (3d Cir. Sept. 8, 2005).  On the facts presented here, this requirement is easily met.  The instant lawsuit arises out of a loan Plaintiff received from Cendant and its subsequent foreclosure.  Similarly, the past four actions that Plaintiffs have filed in the Central District of California and the District of Columbia arose out of the same loan from Cendant and its subsequent foreclosure.  Moreover, Judge Marshall has disposed of the exact claims that

_____

[6]The Court notes that although Plaintiff named Franklin Raines for the first time as a defendant in this action, it is well established that an officer of a corporation is in privity with his corporation.  See RTC Mortg. Trust 1994-S5 v. Quick, 1995 WL 156164 at *3 (E.D. Pa. Apr. 10, 1995); Marine Midland Bank v. Slyman, 995 F. 2d 362, 365 (2d Cir. 1993). Thus, Plaintiffs' addition of Raines as a named defendant is of no consequence.

Plaintiffs put forth here, specifically, the allegations that defendants violated RICO sections 1962(c) and (d), RJN Doc. 26 at 4, and Plaintiffs' claims for common law fraud and deceit.  RJN Doc. 12 at 6-7.  Because the instant action grows out of the same occurrence as Plaintiffs' previous four actions, and because courts have decided these claims on the merits,  the Court holds that Plaintiff's complaint is barred by res judicata.[7]

2. <u>Cendant's Motion to Dismiss: Lack of Jurisdiction</u>

      Next, Cendant contends that Plaintiff's Complaint must be dismissed because this Court lacks personal jurisdiction over Defendant Suzanne Hankins ("Ms. Hankins").  A federal court in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law. <u>See</u> Fed. R. Civ. P. 4(e); <u>see</u> <u>also</u> <u>Carteret Sav. Bank, F.A. v. Shushan</u>, 954 F.2d 141, 144 (3d Cir.1992).  New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution. N.J. Court Rule 4:4-4(c); <u>see</u> <u>Charles Gendler & Co. v. Telecom Equip. Corp.</u>, 102 N.J. 460, 508 A.2d 1127, 1131 (1986). Thus, parties who have constitutionally sufficient "minimum contacts" with New Jersey are subject to suit in New Jersey. <u>See</u> <u>Carteret</u>, 954 F.2d at 149.  This requirement prevents states from exercising jurisdiction over a defendant unless the "defendant purposefully avails itself of the

---

     [7] The Court notes that Hollis-Arrington's Complaint differs from her previous lawsuits only because she puts forth additional and more far-reaching allegations.  Specifically, Plaintiffs allege that the scope of the enterprise conspired to "murder Plaintiff...and her sister in retaliation" and that "defendants have accomplished attempted murder" because Plaintiff's sister "is near death at the hands of defendants which make up the enterprise."  Compl. at ¶¶ 127, 128.  These new allegations do not change the results, however, because Plaintiffs themselves establish that "[a]ll of the predicate acts are directly related to loan fraud and bribery of judicial officials", the exact issues that the parties have litigated previously and that the judicial system has already resolved.

privilege of conducting activities within the forum State, thus invoking the benefits and

privileges of its laws." Hanson v. Deckla, 357 U.S. 235, 253 (1958).  The "minimum contacts"

test may be satisfied by showing that a defendant has continuous and systematic contacts with the

forum state or that the cause of action arose out of defendant's activities in the forum state.  See

Osteotech, Inc. v. GenSci Regeneration Sciences, Inc., 6 F.Supp.2d 349, 353 (D.N.J. 1998).

 Plaintiff has not put forth any evidence that Ms. Hankins has had any contacts, let alone

systematic and continuous contacts, with New Jersey.  Ms. Hankins is a California resident.

Declaration of Suzanne M. Hankins ("Hankins Decl.") at ¶ 2.  She has no assets in New Jersey

and does not engage in any business in New Jersey.  Id. at ¶ 1.  Ms. Hankins is an attorney

licensed to practice only in California.  Id.  Moreover, Ms. Hankins performs all of her legal

services in California, including the services she provided to PHH and Fannie Mae in connection

with the prior litigation.  Id. at ¶ 3.  Moreover, this action did not arise out of Ms.  Hankins'

activities in New Jersey.  The Complaint does not allege that Plaintiffs suffered any injury in

New Jersey as a result of Defendants' actions.  Thus, this Court does not have jurisdiction over

Ms. Hankins and Plaintiff's Complaint must be dismissed as against her.


3. Cendant's Motion to Dismiss: Failure to State a Claim

 Finally, Cendant argues that Plaintiff's Complaint must be dismissed for failing to state

any claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure.  Fed. R.Civ. P. 12(b)(6).  A motion to dismiss for failure to state a claim must

be denied unless it appears that the plaintiff can prove no set of facts that would entitle her to

relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); ALA Inc. v. CCAIR, 29 F.3d 55, 859 (3d

Cir. 1994).  Dismissal is appropriate if Plaintiff fails to assert a cognizable legal theory or fails to allege sufficient facts under a cognizable legal theory. Wallace v. Systems & Computer Technology Corp., 1997 WL 602808 at *5 (E.D. Pa. 1997); McCurdy v. Wedgewood Capital Management Co., Inc., 1999 WL 391494 at *3 n.6 (E.D.Pa. 1999).  All material factual allegations in a complaint are assumed to be true and are construed in the light most favorable to the plaintiff.  Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004).  However, the court need not accept as true conclusory allegations of law, conclusions unsupported by the facts alleged and unwarranted inferences. Flanagan v. Shivley, 783 F.Supp. 922, 927 (M.D.Pa.1992), aff'd, 980 F.2d 722 (3d Cir.1992).

In Counts I and II of their Complaint, Plaintiffs allege that Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c)&(d). Section 1962(c) prohibits participation in an "enterprise" that is conducting a "pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Section 1962(d) makes it unlawful to conspire to violate section 1962(c).  Thus, a plaintiff asserting a claim under 1962(c) must allege the existence of an enterprise; according to the Third Circuit, to establish the existence of an enterprise a Plaintiff must demonstrate "(1) that the enterprise is an ongoing organization with some sort of framework or superstructure for making or carrying out decisions; (2) that the members of the enterprise function as a continuing unit with established duties; and finally (3) that the enterprise must be separate and apart from the pattern of activity in which it engages." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 789-90 (3d Cir. 1984).  Although these elements need not be pled in the Complaint, if a plaintiff's allegations preclude a finding of one of the elements, the complaint must be dismissed. Id. at 790 n.5.  For

15

example, in <u>Seville</u>, the Third Circuit held that because Plaintiff's allegations limited the conspiracy to the underlying offenses, the Plaintiff had "affirmatively negated the existence of the third. . . factor: an enterprise separate and apart from the pattern of activity in which it engages" and could not demonstrate the existence of an enterprise.  <u>Id.</u>

Similarly, in the instant complaint, Plaintiffs allege that all of the Defendants comprise the "racketeering enterprise", Compl. ¶16,  and that the common purpose of the enterprise was to defraud unsuspecting borrowers through fraudulent loan applications, to inflate the books, to "increase the amount owed" on each loan and to "corruptly influence the Judges handling the cases to rule in their favor." Compl. ¶ 17[8].  According to Plaintiffs' own allegations, these specific violations are the sole reason for the existence of the Enterprise, thus, Plaintiffs here, as in <u>Seville</u>, have negated the existence of an enterprise separate and apart from the pattern of activity at issue here.

In addition, despite Plaintiff's statement that "[t]he enterprise is AN ENTITY SEPARATE AND APART FROM THE PATTERN OF ACTIVITY IN WHICH IT ENGAGES [sic]", this allegation is conclusory and merely repeats verbatim the third element needed to establish the existence of an enterprise.  Moreover, although Plaintiffs list four criteria that allegedly support the statement that the enterprise is a separate entity, these allegations refer to the functions of the individual members of the enterprise and not the functions of the enterprise as a whole.  For example, Plaintiffs allege that "[t]he enterprise has a distinct structure based on the essential function of operating...Cendant Mortgage Corporation, e.g. marketing, legal matters,

---

[8]The Court notes that Plaintiffs' Complaint has two paragraphs numbered 17; this citation refers to paragraph 17 that appears on page 15.

security functions, financing functions, etc...the enterprise has employed numerous employees in order to discharge the functions of Cendant Mortgage...the enterprise has a distinct structure including the Cendant office building, the PHH office building." Compl. ¶ 17(a)-(d).  Plaintiffs do not contend that the enterprise engaged in any activity as an enterprise; instead, Plaintiffs merely list activities that Cendant engaged in during the normal course of Cendant's business. Indeed, the only cognizable connection between any of the Defendants is that they were involved in Plaintiffs' loan or the subsequent litigation arising out of the loan and the foreclosure.  Thus, Counts I & II[9] of Plaintiffs' Complaint must be dismissed because Plaintiffs' allegations preclude a finding of one of the elements necessary to establish the existence of an enterprise.

In addition, Count III of Plaintiffs' Complaint alleges common law fraud and deceit. Compl. at p. 58[10].  To survive a motion to dismiss, an allegation of fraud and deceit must be plead with particularity pursuant to Federal Rule of Civil Procedure 9(b).  Fed. R. Civ. P. 9(b). The particularity requirement puts defendants on notice of plaintiff's accusations and "safeguard[s] defendants against spurious charges of immoral and fraudulent behavior."  Seville, 742 F.2d at 791.  Under New Jersey law, the five elements of common-law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the

---

[9] In Count II, Plaintiff alleges that Defendants conspired to violate section 1962(c); the Court notes that a claim under 1962(d) based on conspiracy to violate another subsection will fail if the substantive claim is deficient, as it is here.  Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1191 (3d Cir. 1993).

[10] The Court notes that although the majority of the Court's citations to Plaintiffs' Complaint will provide paragraph cites, Plaintiffs' complaint lacks coherence and uniformity. For example, some of the pages in the Complaint do not have paragraph numbers, while other paragraphs are marked with the same number although they are pages apart.  Thus, although the Court will provide paragraph numbers when possible, the Court may only be able to provide page number citations on other occasions, as here.

defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages. Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997).

Here, Plaintiffs' allegations of fraud and deceit are insufficient to meet this threshold evaluation.  In Count III, Plaintiffs' summarily contend that "[d]efendant's [sic] acts, schemes, misrepresentation etc., constitutes common law fraud...[that] Defendant's [sic] acted intentionally, willfully, wantonly, maliciously, for profit and without just cause or excuse [and that] Plaintiffs suffered damages...as a result of defendant's [sic] wrongful actions." Compl. at p. 58.   These unsubstantiated conclusions do not specify the misrepresentation at issue or any of the other ways in which any of the Defendants perpetrated any alleged fraud.  Thus, Plaintiffs' fraud and deceit claim must be dismissed.


4. Cendant's Request to Impose Sanctions on Plaintiff as Vexatious Litigants

Finally, Cendant requests that this Court impose sanctions on Plaintiffs by deeming them vexatious litigants.  Pursuant to 28 U.S.C. § 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States. . . who so multiplies the proceeding in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. As discussed supra, the Plaintiffs have continuously filed similar complaints against the same defendants in jurisdictions throughout the United States.  All of these previous actions, relating to Ms. Hollis-Arrington's loan from Cendant, were dismissed on the merits.   In total, Plaintiffs have filed five lawsuits in district courts, along with numerous appeals and petitions for certiorari

all of which were resolved against Plaintiffs.

Although I have no doubt that Plaintiffs have acted unreasonably, unnecessarily and vexatiously in continuing to pursue this litigation in the District of New Jersey, the law in this Circuit with regard to applicability of §1927 to pro se litigants is uncertain and I decline to declare Plaintiffs as vexatious litigators under §1927. At the same time, however, Plaintiffs' repeated vexatious filings cannot go unnoticed; thus, instead of deeming Plaintiffs vexatious litigants pursuant to §1927, I am instead issuing restraints against Ms. Hollis-Arrington and Ms. Lightfoot pursuant to my inherent power to protect the courts from oppressive and frivolous litigation[11]. See Chambers v. NASCO, Inc. 501 U.S. 32 (1991); Perry v. Gold & Laine, P.C., 371 F.Supp.2d 622, 632-33 (D.N.J. 2005). In the interest of promoting judicial efficiency and deterring further frivolous findings, this Court enjoins Ms. Hollis-Arrington and Ms. Lightfoot from access to the federal court system in this District without prior leave of this Court when either is proceeding pro se.[12] See Perry, 371 F. Supp. 2d at 632-33; Smith v. Litton Loan Servicing, LP, 2005 WL 289927 (E.D.Pa. Feb. 4, 2005) (issuing a similar injunction against pro se plaintiffs). Leave of court will be freely granted upon Ms. Hollis-Arrington's or Ms Lightfoot's showing through a properly filed petition that a specific proposed filing: (1) can survive a challenge under Federal Rule of Civil Procedure 12; (2) is not barred by principles of

---

[11]The All Writs Act lends further support to this Court's ability to issue a restriction against Plaintiff. 28 U.S.C. § 1651(a). The Act provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of the law." Id. According to the Third Circuit, section 1651(a) authorizes district courts to issue injunctions, thereby restricting the access to federal courts of parties who repeatedly file frivolous lawsuits. See Abdul-Akbar v. Watson, 901 F.2d 329, 332 (3d Cir. 1990).

[12]See the Order following this Opinion.

claim or issue preclusion; (3) is not repetitive or violative of a court order; and (4) is in compliance with Federal Rule of Civil Procedure 11.  See id.  The Order and Injunction to follow will not apply to the filing of timely notices of appeal from this Court to the Third Circuit Court of Appeals and papers solely in furtherance of such appeals.  For the reasons discussed herein, Cendant's Motion to Dismiss is granted and Cendant's Motion to Impose Sanctions on Plaintiff as vexatious litigants is denied in part.

## B. Fidelity's Motion to Dismiss

In response to Plaintiffs' Complaint, Fidelity filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to set forth any claim upon which relief can be granted.  Because this Court has already granted Cendant's motion on the same grounds, for all the reasons discussed supra[13], the Court grants Fidelity's Motion to Dismiss.

## C. McCormack's Motion to Dismiss

In response to Plaintiffs' Complaint, Defendant, McCormack, filed a Motion to Dismiss Plaintiffs' Complaint because: (1) this Court lacks jurisdiction over the Defendant[14]; (2) Plaintiffs' Complaint fails to establish that venue is proper in New Jersey; (3) Plaintiffs' Complaint fails to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  As above,

---

[13]See supra p. 14-18.

[14]Plaintiffs have failed to establish that McCormack, the County Clerk for Los Angeles County, Los Angeles California, has had minimum contacts or engaged in systematic activities in the State of New Jersey sufficient to enable this Court to exercise personal jurisdiction over Defendant.  See discussion supra p. 13-14.

this Court has already held that Plaintiffs' Complaint is barred by res judicata and that it fails to

state a claim pursuant to Fed. R. Civ. P. 12(b)(6).   Moreover, although McCormack presents the

additional issue of whether venue is proper in New Jersey, because I am dismissing this

Complaint in its entirety, and granting McCormack's Motion to Dismiss on other grounds, I find

that the issue of proper venue is moot.  For all the reasons discussed supra, this Court grants

McCormack's Motion to Dismiss.


**D. USAA's Motion to Dismiss**

In response to Plaintiffs' Complaint, USAA filed a Motion to Dismiss based on res

judicata, failure to state a claim upon which relief can be granted pursuant to Federal Rule of

Civil Procedure 12(b)(6) and improper venue.  For all the reasons discussed supra, this Court

grants USAA's Motion to Dismiss.


**E. Tennen's Motion to Dismiss**

In response to Plaintiffs' Complaint, Defendant Tennen filed a Motion to Dismiss for lack

of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2)[15] and for improper

venue pursuant to 12(b)(3).  For all the reasons discussed supra, this Court grants Tennen's

Motion to Dismiss.


**F. Houshold's Motion to Dismiss**

---

[15]Plaintiffs have failed to establish that Tennen has had minimum contacts or engaged in
systematic activities in the State of New Jersey sufficient to enable this Court to exercise
personal jurisdiction over Defendant.  See discussion supra p.13-14.

In response to Plaintiffs' Complaint, Household filed a Motion to Dismiss Plaintiffs' Complaint as barred by res judicata and for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  For all the reasons discussed supra, this Court grants Houshold's Motion to Dismiss.

**G. Judges' Motion to Dismiss**

In addition to the corporate and individual defendants named in this action, Plaintiffs have filed suit against the Honorable Pamala Rymer, the Honorable Andrew Kleinfeld, the Honorable Consuelo B. Marshall, and the Honorable Stephen V. Wilson.  Plaintiffs allege that the Judges participated in a racketeering scheme to commit loan fraud.  The complaint vaguely asserts that the Judges "are part of the enterprise, and were put into place to control any legal actions against other members of the enterprise. . . [and] knowingly issued money judgments in favor of the enterprise."  Compl. at ¶ 70.  Moreover, Plaintiffs' Complaint alleges that each individual judge was "associated with the racketeering enterprise as the Judicial official to corruptly fix the out come [sic] of any matters before the[m] involving the affairs of the enterprise and violated" numerous statutes including 18 U.S.C. §§§ 201,1343 and 1513.

Initially, this Court holds that the Judges' Motion to Dismiss is granted for all the reasons discussed supra.  Moreover, the Court holds that Plaintiffs' Complaint must be dismissed against the Judges because judges are judicially immune from suit.  It is well established that judges are absolutely immune from damages suits for acts committed within the scope of their judicial duties.  See Forrester v. White, 484 U.S. 219 (1988); Pierson v. Ray, 386 U.S. 547 (1967).  In Pierson, the United States Supreme Court addressed the doctrine of judicial immunity; there, the

22

Court established that judicial "immunity applies even when the judge is accused of acting maliciously and corruptly, and it 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.'"  386 U.S. at 53-554 (citations omitted.).

In the instant action,  Plaintiff alleges that the Judges were involved in a conspiracy that affected their rulings.  Although it is relatively unclear from the Complaint[16], Plaintiffs' allegations against the Judges must concern the Judges' involvement as presiding judges in the numerous suits filed by Plaintiffs.  However, as noted above, judicial acts, such as issuing decisions in litigation, cannot be a basis for imposing liability because these acts are judicial in nature.  Therefore, the Judges are clearly immune from Plaintiffs' claims and Plaintiffs' Complaint must be dismissed against them.


**H. Matthews Motion to Set Aside Default and to Dismiss**

In response to Plaintiffs' Complaint, Matthews, filed a Motion to Set Aside the clerk's September 8, 2005 Entry of Default and filed a Motion to Dismiss for lack of personal jurisdiction and on res judicata grounds.  Pursuant to Federal Rule of Civil Procedure 55(c), a court may set aside an entry of default "for good cause shown."  In deciding whether to set aside an entry of default, a court considers three factors: (1) whether plaintiff will be prejudiced; (2) whether defendant has a meritorious defense; and (3) whether culpable conduct of defendant led

---

[16]The Court notes that there is nothing in the complaint to indicate when, where, or how the names Judges did anything improper that would cause injury to plaintiffs.

to the default.  Feliciano v. Reliant Tooling Co., Ltd., 691 F.2d 653, 656 (3d Cir. 1982).

Matthews' argues that a consideration of these three factors warrant setting aside the clerk's entry

of default. The Court agrees.

First, Plaintiffs would not be prejudiced by setting aside the clerk's entry of default

because this case is in the pre-discovery phase. Second, Matthews has several meritorious

defenses; specifically, this Court lacks personal jurisdiction over Matthews, the doctrine of res

judicata bars Plaintiffs' claims and Plaintiffs' Complaint fails to state a claim upon which relief

can be granted.  Finally, Matthews' failure to timely respond or answer was not a product of

culpable conduct, but an oversight on the part of Fidelity, his title insurance carrier, who

Matthews believed would retain counsel to defend this action on his behalf as it had in all of

Plaintiffs' prior lawsuits that involved him.  Here, Fidelity's delay in retaining counsel for

Matthews was the product of a misunderstanding by Fidelity's in-house counsel about the

identity of the insured.  Thus, the Court grants Matthews' Motion to Set Aside the Clerk's Entry

of Default.  In addition, for all the reasons stated supra, the Court grants Matthews' Motion to

Dismiss Plaintiff's Complaint.


**I. Plaintiffs' Motions for Preliminary Injunction**

On September 16, 2005, Plaintiffs filed a Motion for a Preliminary Injunction.  The

standard for evaluating a motion for preliminary injunction is a four-part inquiry as to: (1)

whether the movant has shown a reasonable probability of success on the merits; (2) whether the

movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief

will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary

relief will be in the public interest. U.S. v. Bell, 414 F.3d 474, 478 n.4 (3d Cir. 2005).  Because the Court is dismissing Plaintiffs' Complaint in its entirety, Plaintiff has clearly not been able to show a probability of success on the merits.  Thus, the Court denies Plaintiffs' Motion for a Preliminary Injunction.


**III. CONCLUSION**

For the reasons stated above, Cendant's, Fidelity's, McCormack's, USAA's, Tennen's, Household's, Judges' and Matthews' Motions to Dismiss are granted.  In addition, Cendant's Motion for Judicial Notice is granted as well as Matthews' Motion to Set Aside Default. However, Cendant's Motion to Impose Sanctions on Plaintiff is granted in part.  As discussed above, I am exercising my inherent power to enjoin Plaintiffs from further pro se filings unless certain conditions are met.  Finally, Plaintiffs' Motion for Preliminary Injunction is denied.  An appropriate order follows.


/s/ Freda L. Wolfson
Honorable Freda L. Wolfson
United States District Judge

Dated: November 15, 2005